IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LAUREN MINNITI, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. ) ) |
| v. | ) ) **JURY TRIAL DEMANDED** |
| DYNASTY INTERNATIONAL MARKETING GROUP, INC., a Florida corporation, DYNASTY INTERNATIONAL PRODUCTIONS, INC., a Florida corporation, and MAX KNOWLES, an individual, | ) ) ) ) ) ) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

Plaintiff Lauren Minniti ("Plaintiff") bring this Class Action Complaint against Defendants Dynasty International Marketing Group, Inc. ("DI Marketing"), Dynasty International Products, Inc. ("DI Productions") (collectively "Dynasty"), and Max Knowles ("Knowles") (collectively, "Defendants"), on behalf of herself and all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### I. NATURE OF THE ACTION

1. Dynasty consists of two corporations – DI Marketing and DI Productions – that jointly conduct operations to host and advertise events. Dynasty uses these events to sell consumer goods and services and as well as to recruit salespersons.

2. Knowles is the principal officer of DI Marketing and DI Productions and is actively involved in the promotion of Dynasty's events.

3. In an effort to market Dynasty's products and services, Defendants sent (or directed to be sent on their behalves) unsolicited text messages to the wireless telephones of Plaintiff and each of the members of the Class without prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA").

4. Neither Plaintiff nor the other Class members ever consented in writing, authorized, desired or permitted Defendants to send text messages to their wireless telephones.

5. By sending such unauthorized text messages, Defendants caused Plaintiff and each of the Class members actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited text messages, and the monies paid to their wireless carriers for the receipt of such messages.

6. In order to redress these injuries, Plaintiff seeks an injunction requiring Defendants to cease all unsolicited text message activities, and an award of statutory damages to the Class members under the TCPA, together with costs and reasonable attorneys' fees.

## II.   JURISDICTION AND VENUE

7. This Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.

8. The Court has personal jurisdiction over Defendants under the Florida Long-Arm Statute, Fla. Stat. § 48.193, because Defendants were engaged in solicitation or service activities within Florida. This court also has personal jurisdiction over the Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward the state of Florida. Defendants, by sending mass text messages into the state soliciting business, have sufficient contacts in this State to render the exercise of jurisdiction by this Court permissible.

9. In addition, this Court has personal jurisdiction over Defendants because they conduct and carry on business in Florida.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this District.

### III. PARTIES

*Plaintiff*

11. Plaintiff Lauren Minniti is an individual domiciled in Broward County, Florida.

*Defendants*

12. Defendant DI Marketing is a corporation organized in and existing under the laws of the State of Florida with its principal place of business located in Broward County, Florida.

13. Defendant DI Productions is a corporation organized in and existing under the laws of the State of Florida with its principal place of business located in Broward County, Florida.

14. DI Marketing and DI Production are sister companies that jointly conduct operations to host and advertise events to sell consumer goods and services.

15. Defendant Max Knowles is an individual domiciled in Florida. Knowles is the principal officer of DI Marketing and DI Productions and is actively involved in the promotion of Dynasty events.

### IV. FACTUAL BACKGROUND

*Dynasty's Business Model*

16. On information and belief, Dynasty operates on a multi-level marketing platform.

17. Dynasty hosts and advertises events to sell consumer services and goods, as well as its proprietary merchandise, such as shirts, hats, and bags.

18. In addition, Dynasty uses these events to recruit salespersons for its multi-level marketing platform.

19. On information and belief, Dynasty's website is http://dynastysuccess.com (the "Website").

20. The Website lists events hosted, operated, and advertised by Dynasty, including an event entitled "Ft Lauderdale – VIP Event + Training" located at the Sheraton Hotel, 1825 Griffin Road, Dania Beach, FL 33004.[1]

*Background on Unsolicited SMS Activity*

21. In recent years, marketers who have often felt stymied by federal laws limiting solicitation by telephone, fax machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

22. One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

23. SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully made, the recipient's wireless phone rings, alerting him or her that a message is being received. As wireless telephones are inherently mobile and are frequently carried on their owner's person, SMS messages may be received by the called party virtually anywhere in the world.

24. According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds—from

---

[1] Dynasty International, Events, Ft. Lauderdale – VIP Event + Training, http://dynastysuccess.com/events/ft-lauderdale-vip-event-training (last accessed Mar. 20, 2014).

coupons to phishing schemes – sent directly to user's cell phones."[2] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[3]

25. Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

26. Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent.

27. As of October 16, 2013, senders of SMS message advertisements for goods or services must obtain the recipient's prior express written consent.

*The Unsolicited SMS Message Advertisement to Plaintiff*

28. As part of their advertising campaign, Defendants have sent and continue to send unsolicited text messages to Plaintiff's and the Class members' wireless phones without prior express written consent.

29. On or about January 8, 2014, Defendants transmitted the following text message to Plaintiff's wireless phone:

> Dynasty: Saturday VIP
> Event: 915am The time is
> now 1700.00 on the table
> Sheraton Hotel 1825 Griffin
> Rd Dania Bch
> Biz Attire No Jeans/
> sneakers. Will Pick u up
> just call me
>
> Txt STOP 2 stop

---

[2] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited Mar. 20, 2014).

[3] *Id.*

A true and correct copy of the text message is attached as Exhibit A.

30. The "from" field of such transmission was identified as "(305) 479-4877."

31. The text message invites recipients to an event hosted by "Dynasty."

32. Dynasty's Website promotes the event advertised in the text message attached as Exhibit A.

33. On information and belief, Knowles is actively involved in the marketing of the events listed on the Website, including the event advertised in the text message attached as Exhibit A.[4]

34. On information and belief, Knowles personally approved, authorized and participated in the transmission of the texts by:

    a. ordering a list of potential customers' text numbers to be purchased or compiled;

    b. instructing or overseeing Dynasty employees or third parties who sent the texts; and

    c. developing or approving Dynasty's text campaign.

35. Accordingly, Knowles is personally liable under 47 U.S.C. § 217 for Dynasty's violations of the TCPA, which provides a private right of action against "any person."

36. Defendants sent or transmitted, or had sent or transmitted on their behalves, the same (or substantially the same) text messages *en masse* to a list of thousands of wireless telephone numbers or randomly generated phone numbers.

37. On information and belief, Defendants sent these text messages to Plaintiff and the Class members using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

---

[4] *See* Max Knowles, Facebook, https://www.facebook.com/DynastyMaxKnowles (advertising Dynasty events) (last accessed Mar. 20, 2014).

38. Plaintiff never consented to in writing, requested, or otherwise desired or permitted Defendants to send or transmit text messages to her wireless phone.

## V. CLASS ALLEGATIONS

39. Plaintiff brings this action, as set forth below, on behalf of herself and as a class action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals in the United States who received one or more unsolicited text messages from or on behalf of Defendants Dynasty International Marketing Group, Inc. and Dynasty International Productions, Inc. (the "Class").

Excluded from the Class are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

40. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

41. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable.  On information and belief, there are thousands of consumers who have been damaged by Defendants' wrongful conduct as alleged herein.  The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendants' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

42. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. whether Defendants' conduct constitutes a violation of the TCPA;

   b. whether the equipment Defendants used to send the text messages in question was an automatic telephone dialing system as contemplated by the TCPA;

   c. whether Plaintiff and the Class are entitled to actual, statutory, or other forms of damages, and other monetary relief and, in what amount(s);

   d. whether Plaintiff and the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

   e. whether Plaintiff and the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

43. **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claim is typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

44. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of the Class members will be fairly and adequately protected by the Plaintiff and her counsel.

45. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

46. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.  CLAIM ALLEGED

### COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
### (On Behalf of the Class)

47. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48. Defendants and/or their agents sent unsolicited commercial text messages to the wireless telephone number of Plaintiff and the other Class members *en masse* without their prior express written consent.

49. Defendants sent the text messages, or had them sent on their behalves, using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers.

50. Defendants utilized equipment that sent the text messages to Plaintiff and other Class members simultaneously and without human intervention.

51. By sending the unsolicited text messages to Plaintiff and the Class, Defendants have violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, the Class members suffered actual damages in the form of monies paid to receive the unsolicited text messages on their wireless phones and under section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

52. Should the Court determine that Defendants' conduct was willful or knowing, the Court may, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other Class members.

## VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Lauren Minniti, individually and on behalf of the Class, requests that the Court enter an Order as follows:

A. Certifying the Class as defined above, appointing Plaintiff Lauren Minniti as the representative of the Class, and appointing her counsel as Class Counsel;

B. Awarding of actual and statutory damages;

C. Requiring Defendants to cease all unsolicited text message activities, and otherwise protecting the interests of the Class;

D. Awarding of reasonable attorneys' fees and costs; and

E. Awarding such other and further relief that the Court deems reasonable and just.

Dated: March 25, 2014

Respectfully submitted,

LAUREN MINNITI, individually and on behalf of all others similarly situated

By:   /s/ Scott D. Owens
    One of the Attorneys for Plaintiff
    And the Proposed Putative Class

Joseph J. Siprut*
*jsiprut@siprut.com*
Gregg M. Barbakoff*
*gbarbakoff@siprut.com*
Ismael T. Salam*
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.470.6588

*Pro hac vice* application forthcoming

Scott D. Owens
*scott@scottdowens.com*
**LAW OFFICE OF SCOTT D. OWENS, ESQ.**
633 East Hallandale Beach Blvd.
Hallandale, Florida 33009
877.332.8352
Fax: 954.337.0666

4826-6178-9209, v.  3